UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| CASSANDRA R. WILLIAMS, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-408 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Cassandra Williams underwent surgery on her right shoulder to repair a torn rotator cuff. She attempted to return to work afterwards but continued to experience pain that her doctors could not explain, eventually leading her to retire. Ms. Williams applied for social security disability benefits, alleging that she became disabled at the time of her surgery. An administrative law judge found, however, that she still retained the capacity to perform her past work, so her claim was denied. Ms. Williams appeals that decision, but for the reasons explained below, the Court affirms the denial of benefits.

## I. FACTUAL BACKGROUND

Ms. Williams worked for a number of years for an appliance manufacturer, first as an account representative and then as a lead representative. Around the age of 61, she was diagnosed with a rotator cuff tear after experiencing pain for about a year. After conservative treatment failed to resolve the problem, Ms. Williams underwent surgery in April 2013 to repair her rotator cuff. Following the surgery, Ms. Williams continued to complain of pain, so she underwent an MRI, which showed that the rotator cuff repair remained intact. When Ms. Williams continued to complain of pain, the doctor noted that he was "at a loss to fully explain

her discomfort" and that there was a "disconnect between her objective findings and her subjective complaints." (R. 362). He recommended that she undergo a work hardening program, though he expressed question at that time whether she would be able to return to work in light of the pain she was reporting. In light of her persisting reports of pain, Ms. Williams underwent an arthroscopy on her right shoulder in December 2013. Following that procedure, her treating physician stated he "would anticipate that she should have no difficulty returning to near-normal shoulder function." (R. 356). When her pain still failed to improve, Ms. Williams was referred to a pain management specialist and she received a number of injections over the next year. While the injections provided some relief for a period of time, they did not relieve the pain entirely.

Ms. Williams had attempted to return to work several times after her first shoulder surgery. However, her work activities, including reaching in front of her to type, caused too much discomfort in her shoulder, so she elected to retire around March 2014. At that time, she applied for social security disability benefits, claiming that she became disabled as of the date of her first surgery. An administrative law judge ultimately found that Ms. Williams was limited to performing sedentary work and that she could not reach above her shoulder with her right arm. In reaching that conclusion, the ALJ recited all of the medical evidence in the record, and evaluated the opinion evidence and Ms. William's testimony at the hearing. Based on testimony by a vocational expert, the ALJ found that a person with Ms. Williams' residual functional capacity would be able to perform her past relevant work, so she was not disabled. The Appeals Council denied review, so Ms. Williams filed this action.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of

disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a

significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Williams offers two arguments in support of reversal. She first argues that the ALJ erred in relying on the vocational expert's testimony to conclude at step four that she could still perform her past work. Second, she argues that the ALJ erred in declining to incorporate more restrictive limitations in the residual functional capacity analysis as to her ability to use her right arm. The Court considers each in turn.

### A. Vocational Expert Testimony

Ms. Williams first argues that the ALJ erred in several respects in relying on the vocational expert's testimony to find that she could still perform her past work. At the hearing, the ALJ asked the vocational expert if a person who was limited to sedentary work and could not reach above the shoulder with her right arm could perform Ms. Williams' past work. The vocational expert answered in the affirmative. (R. 56). The ALJ credited that testimony and thus concluded at step four that Ms. Williams could perform her past work, meaning she did not qualify as disabled. (R. 29–30).

Ms. Williams argues that the ALJ should not have relied on the vocational expert's testimony because the vocational expert never provided a Dictionary of Occupational Titles code number to classify her previous positions. Ms. Williams suggests that this prevented her or the ALJ from evaluating the accuracy of the vocational expert's testimony. As the Commissioner notes, however, the vocational expert *did* provide the DOT code numbers for Ms. Williams' previous positions. Prior to the hearing, the vocational expert completed a work summary form for Ms. Williams' positions. (R. 281). The vocational expert indicated in that form that Ms. Williams' positions included work as an account representative, with a DOT code of 241.367-

014, and as a lead account specialist, with a DOT code of 249.137-026. *Id.* That form further specified the skill levels and the physical demands of the positions, both per the DOT and as actually performed by Ms. Williams. *Id.* That form was admitted into evidence as Exhibit 13E, and the ALJ's decision specifically cited both that exhibit and the vocational expert's hearing testimony. (R. 29). Thus, the factual premise for Ms. Williams' argument is plainly mistaken, as the vocational expert did provide a DOT code for these positions, and that was available both to Ms. Williams and the ALJ. Since Ms. Williams did not file a reply brief to clarify her argument or address its validity in light of this fact, the Court cannot find that this argument presents a basis for reversal.

Moreover, Ms. Williams' focus on the DOT is misplaced in the first place. At step four, the ALJ must consider whether claimants can perform their past work either as they actually performed it or as it is generally performed. The DOT, which addresses how positions are generally performed, is relevant to the latter issue. Thus, "[w]hen a [vocational expert] testifies that a claimant can still perform her past work as it was actually performed, the DOT becomes irrelevant." *Hernandez v. Astrue*, 277 F. App'x 617, 624–25 (7th Cir. 2008); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir.2003); *see also Johnson v. Colvin*, No. 14-CV-25-BBC, 2014 WL 6982314, at *3 (W.D. Wis. Dec. 10, 2014) ("The Dictionary of Occupational Titles provides information as to how a job is *generally* performed in the national economy, and an administrative law judge need not consider such information if he bases his decision on an individual's *actual* performance of past relevant work . . . ."). Here, the vocational expert was present at the hearing at which Ms. Williams testified about the demands of each of her prior positions. Ms. Williams did not indicate that those positions ever required reaching above her shoulder. The vocational expert then testified that a person with the residual functional capacity

to perform sedentary work with no ability to reach above the shoulder with her right arm would be able to perform Ms. Williams' past relevant work. (R. 56). Counsel did not further address that issue at the hearing, nor does she now cite any evidence that Ms. Williams' jobs as she performed them exceeded that residual functional capacity. The ALJ thus found that Ms. Williams was able to perform her past work both as it is "actually and generally performed." (R. 30). Thus, the DOT would not have affected the ALJ's finding at step four that Ms. Williams could perform her past work as it was actually performed.

Ms. Williams finally argues on this topic that the vocational expert did not adequately identify other jobs that would be available and did not say whether Ms. Williams had any transferrable skills. Neither of those inquiries are relevant to step four, though. Step four concerns whether a claimant can perform their past work. If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to step five, and must consider whether there are other jobs that a person with the claimant's limitations could perform. *Id.* § 404.1520(a)(4)(v). As part of that analysis, an ALJ can also consider whether the claimant has any skills that are transferrable to other positions. Social Security Ruling 82-41 ("Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing[s] . . . but does prevent the performance of past relevant work . . . ."). Here, the ALJ concluded his analysis at step four, having found that Ms. Williams could perform her past relevant work. Thus, it does not matter whether any other jobs existed that she could perform or whether she had any skills that would transfer to those jobs. Accordingly, the ALJ did not err in this respect either.

**B.    Residual Functional Capacity**

Ms. Williams next argues that the ALJ should have included more restrictive limitations as to her ability to use her right arm. Ms. Williams' argument focuses predominantly on reciting

7

evidence in the record that could support such restrictions. However, the Court's role on review is not to "engage in [its] own analysis of whether" Ms. Williams is disabled, nor may the Court "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Rather, the Court's "task is limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.*; *Lopez*, 336 F.3d at 539. It is thus essential for a plaintiff to engage with the analysis offered by the ALJ and to explain why the reasons the ALJ offered were erroneous or unsupported by the evidence—merely recounting evidence from which the ALJ might have come to a different conclusion fails to provide a basis to reverse an ALJ's decision.

Ms. Williams' argument begins with four pages of reciting evidence that she believes would support greater restrictions on her ability to use her right arm. That sort of discussion is unhelpful on its own, though, as it fails to grapple with the ALJ's analysis and show why the ALJ erred. Ms. Williams later cites several cases for the proposition that an ALJ must consider all relevant medical evidence and cannot discuss only evidence that favors the conclusion while ignoring evidence to the contrary. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). She never proceeds to explain how the ALJ committed that error here, though; all of the evidence that Ms. Williams recounted in the pages leading to this argument was duly discussed in the ALJ's opinion. Ms. Williams also notes that she received repeated injections into her shoulder and continued seeking invasive treatment. The ALJ did not ignore that evidence, though—the ALJ discussed that evidence at length, spending nearly a full page discussing Ms. Williams' course of treatment with the pain management doctor, including the injections she received during that treatment. (R. 27–28). But as the

8

Commissioner observes, the ALJ also noted during that discussion that the injections provided some degree of relief, although not total relief. And the ALJ found from this and other evidence that Ms. Williams did have limitations with her right arm, in that she was never able to reach above the shoulder and could not perform more than sedentary work. Ms. Williams wishes the ALJ had weighed this evidence differently and imposed greater limitations, but the ALJ certainly did not ignore it, and Ms. Williams has not developed any argument as to how the ALJ erred in considering this evidence. *Denton*, 596 F.3d at 426 (affirming the ALJ's decision since the "ALJ specifically addressed all the evidence that [the plaintiff] points out, though he did not assign the significance to it that [the plaintiff] prefers").

Ms. Williams also argues in passing that the ALJ erred in evaluating her credibility. She correctly notes that an ALJ may not reject subjective complaints of pain solely because they are not fully supported by objective evidence. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). However, the ALJ did not, as Ms. Williams suggests, rely solely on the lack of objective evidence to find that Ms. Williams' subjective pain was not as limiting as she claimed. The ALJ relied on a variety of other evidence that Ms. Williams' brief fails to address, meaning she has not adequately developed an argument as to why the ALJ's credibility finding should be set aside. *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (finding the plaintiff's challenge to the credibility finding to be waived, as the plaintiff objected to the use of boilerplate in the ALJ's decision but failed to explain why the ALJ's credibility analysis was erroneous); *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015) (finding that the plaintiff waived her challenge to the ALJ's credibility finding by failing to develop her assertions as to why each of the ALJ's reasons were improper). The ALJ began by discussing Ms. Williams' activities of daily living, observing that Ms. Williams could prepare her own simple meals, wash dishes, do laundry,

9

perform light housekeeping, drive a car, shop by computer, pay bills, and use a checkbook. (R. 25; *see also* R. 28 (noting that a consulting physician's opinion as to the activities Ms. Williams could engage in indicated a lack of greater restrictions)). The ALJ found that these activities "suggest greater use of the upper extremity" than Ms. Williams' claimed limitations, and that they also suggest "a lack of interference from her alleged pain in her cognitive abilities to perform these activities, inconsistent with her alleged limitations." *Id.* Ms. Williams does not acknowledge or attempt to identify any error in this aspect of the ALJ's analysis, so it would be difficult to conclude that the ALJ's credibility finding was "patently wrong," as is required to reverse on that basis. *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (affirming a credibility finding because it was not "patently wrong," even though the court found "some merit in two out of three of [the plaintiff's] attacks").

In addition, as Ms. Williams notes, the ALJ also relied on the lack of objective evidence to support her alleged limitations. (R. 25). While an ALJ may not rely *solely* on the lack of such evidence, an ALJ may properly consider that as one of multiple factors in evaluating credibility, and the ALJ did so here. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) ("While a hearing officer may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, the officer may consider that as probative of the claimant's credibility."); *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("It would be a mistake to say 'there is no objective medical confirmation of the claimant's pain; therefore the claimant is not in pain.' But it would be entirely sensible to say 'there is no objective medical confirmation, and this reduces my estimate of the probability that the claim is true.'"). The ALJ further noted that even Ms. Williams' own treating physician questioned the extent of her pain, as the doctor wrote in a

treatment note that he "'clearly stated our disconnect between her objective findings and her subjective complaints.'" (R. 25–26 (quoting R. 362)). The ALJ also gave "great weight" to the treating physician's opinion following Ms. Williams' second surgery that "she should have no difficulty returning to near-normal shoulder function." (R. 26, 356). Ms. Williams does not contest the weight the ALJ gave to that opinion, or the ALJ's handling of any of the medical opinion evidence in the record. Given Ms. Williams' failure to confront these various bases for the ALJ's credibility finding, the Court cannot find that the finding was patently wrong.

At bottom, Ms. Williams has not raised more than a difference of opinion as to how the evidence should be weighed. Though there is evidence in the record from which the ALJ could have concluded that Ms. Williams had greater limitations, weighing and resolving conflicts in the evidence is the province of an ALJ. Ms. Williams has not presented a basis upon which the Court could find that the ALJ's decision was erroneous, so the Court must affirm the decision.

## V.  CONCLUSION

For those reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED:  October 31, 2018

                                                     /s/ JON E. DEGUILIO
                                                     Judge
                                                     United States District Court